UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED CAPITAL FINANCIAL ADVISERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CAPITAL INSIGHT PARTNERS, LLC; et al., <br><br> Defendants. | 2:12-CV-0300-LRH-PAL <br><br> ORDER |

Before the court is plaintiff United Capital Financial Advisers, Inc.'s ("United Capital") motion for a preliminary injunction. Doc. #5.[1] Defendants Capital Insight Partners, LLC ("Capital Insights"); Suzanne Youles ("Youles"); and Vicki Gilman ("Gilman") (collectively "defendants") filed an opposition (Doc. #22) to which United Capital replied (Doc. #24).

**I.  Facts and Background**

Plainitff United Capital provides investment and financial planning services throughout the United States. In 2008, United Capital hired defendant Youles as a case manager for its new Las Vegas office. In her position, Youles had direct contract with United Capital's clients and client information including confidential information and company trade secrets. In October 2009, defendant Gilman was hired as an administrative manager at United Capital's Las Vegas office.

---

[1] Refers to the court's docket number.

Gilman also had direct contact with United Capital's clients and client information including confidential information and company trade secrets.

At the start of their employment, both Youles and Gilman executed an Employee Confidentiality Agreement ("Confidentiality Agreement").[2] The Confidentiality Agreement provides in part:

> Employee recognizes and acknowledges that certain knowledge and information which he/she has acquired or will acquire relating to the business of United Capital Financial Advisers, Inc. (the "Company") is Confidential Information that is the valuable property of the Company and shall be held by Employee in confidence and trust for the sole benefit of the Company . . . Employee agrees not to use, disclose, divulge, or publish, without the prior written consent of the Company, at any time during the Term hereof or thereafter any Confidential Information.

The Confidentiality Agreement further provides that:

> Employee will not, except on behalf of the Company or an affiliate of the Company, at any time during the period commencing on the date of this Agreement and continuing until the date that is three (3) years after termination of all interests in the Company for whatever reason ("Termination Date"), directly or indirectly, whether along or with any other Person, solicit, or assist in the solicitation of, any Person (a) who is, or was during the two-year period ending on the Termination Date, a client of the Company with whom or which Executive had contact on behalf of the Company during such two-year period ending on the Termination Date, for the purpose of selling such Person any products or services competitive with the products and services sold by the Company during such two-year period ending on the Termination Date . . ..

In June 2010, defendants Youles and Gilman executed an additional agreement entitled Employee Confidential Information, Non-Solicitation and Invention Assignment Agreement ("2010 Agreement").[3] Pursuant to the 2010 Agreement, Youles and Gilman agreed that they would not use or disclose United Capital's confidential information or trade secrets, or any other "nonpublic personal information," nor would they, for a period of thirty-six (36) months following the

---

[2] Copies of the Confidentiality Agreement are attached as Exhibits A and B to the Declaration of Mike Herman ("Herman"). Doc. #5, Herman Decl., Exhibit A; Exhibit B.

[3] Copies of the 2010 Agreements are attached as Exhibits C and D to the Herman Declaration. Doc. #5, Herman Decl., Exhibit C; Exhibit D.

termination of their employment:

> [S]olicit, contact, call upon, communicate with or attempt to communicate with any Client of United Capital . . . with a view to sell or provide any deliverable or service competitive with any deliverable or service sold or provided by United Capital at the time of cessation of [their] employment.

On Friday, February 17, 2012, defendants Youles and Gilman resigned their employment with United Capital. Starting on the afternoon of Friday, February 17, 2012, and the following three day holiday weekend, defendant Capital Insight, a company also in the business of providing financial services, contacted those United Capital clients that Youles and Gilman had overseen and announced that Youles and Gilman had joined the firm and that "we will work throughout this holiday weekend."

On February 24, 2012, United Capital filed the underlying complaint against defendants alleging six causes of action: (1) breach of contract - non-solicitation; (2) breach of contract - confidentiality; (3) breach of contract - nonpublic personal information; (4) intentional interference with business and contractual relations; (5) misappropriation of trade secrets; and (6) computer fraud in violation of 18 U.S.C. § 1030. Doc. #1. Thereafter, on March 12, 2012, United Capital filed the present motion for a preliminary injunction. Doc. #5.

On March 29, 2012, the court held a hearing on United Capital's motion.

## II.   Discussion

Federal Rule of Civil Procedure 65 provides that a court may grant a preliminary injunction upon a showing of: (1) irreparable harm to the petitioning party; (2) the balance of equities weighs in petitioner's favor; (3) an injunction is in the public's interest; and (4) the likelihood of petitioner's success on the merits. *See* FED. R. CIV. P. 65; *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 376 (2008) (citations omitted). The court shall address each element below.

### A. Likelihood of Success on the Merits

"The sine qua non of a preliminary injunction inquiry is likelihood of success on the merits:

3

if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *New Comm Wireless Services, Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002). However, a plaintiff may be awarded a temporary restraining order by establishing "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor" so long as the plaintiff satisfies the additional *Winter* factors including irreparable harm and that a temporary restraining order is in the public's interest. *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1050 (9th Cir. 2010).

United Capital has brought several claims for breach of contract against defendants and is seeking to enjoin the defendants from further soliciting United Capital's clients during the pendency of this action and destroying or returning any confidential information Youles and Gilman acquired during their employment with United Capital. *See* Doc. #5. To establish a claim for breach of contract, a plaintiff must establish: (1) a contractual relationship between the parties; (2) a breach of that contract by defendant; and (3) damages. *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003).

The court has reviewed the documents and pleadings on file in this matter, as well as the arguments presented at the hearing, and finds that United Capital is likely to succeed on its claims for breach of contract. First, the court finds, for the purposes of the preliminary injunction, that Youles and Gilman signed both the Confidentiality Agreement and the 2010 Agreement, that these agreements are enforceable, and that these agreements provide that Youles and Gilman would not disclose United Capital's confidential information, nonpublic personal information, and trade secrets, as well as not solicit United Capital's clients for a period of years after termination of their employment.

Second, the court finds that defendants' actions in sending out the February 17, 2012 notice that Youles and Gilman joined the Capital Insight firm constitutes a breach of the non-solicitation

language in the 2010 Agreement. The February 12, 2012 notice[4] goes beyond merely announcing the addition of Youles and Gilman to the Capital Insight firm and providing their new contact information. Rather, the announcement emphasizes the firms services referring to itself as "an independent investment advisory boutique" and explaining how Capital Insight uses a team approach to its client services. Further, the notice touted the firms history and quality. The purpose of this notice was more than simply informing clients of Youles and Gilman's new employment; the purpose was to solicit United Capital's clients and entice them to join Capital Insights.

Third, United Capital has sufficiently established that defendant Youles's action in e-mailing herself a copy of the detailed client ranking list constitutes a breach of the non-disclosure and confidentiality language of the Confidentiality Agreement. The list contained personal and confidential information concerning assets and investments of United Capital's clients, included highly confidential rankings for each United Capital client, and contact information for each client. *See* Doc. #5, Herman Decl., ¶10. United Capital has clearly established that it is likely to succeed on the merits of its breach of contract claims.

**B. Irreparable Harm**

A plaintiff must show that an irreparable injury is *likely*, not merely *possible*, before a temporary restraining order may be issued. *American Trucking Ass'ns v. City of Los Angeles*, F.3d 1046, 1052 (9th Cir. 2009) (reversed on other grounds *Am. Trucking Ass'ns v City of Los Angeles*, 596 F.3d 602 (9th Cir. 2010)) (emphasis added). "Issuing an [injunction] based only on a possibility of irreparable harm is . . . an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 129 S. Ct. at 375-76.

Here, United Capital has established that it would be irreparably harmed by allowing defendants to continue to breach the Confidentiality Agreement and 2010 Agreement. The financial

---

[4] A copy of the notice sent to United Capital's clients is attached as Exhibit F to the Herman declaration. Doc. #5, Herman Decl., Exhibit F.

5

services industry is highly competitive and United Capital has established that it will suffer further erosion of its client base and associated goodwill and thereby lose its competitive advantage if an injunction is not issued. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (the threatened loss of company goodwill and prospective clients may constitute an irreparable harm). Accordingly, the court finds that United Capital is likely to suffer irreparable harm if an injunction is not issued.

### C. Balance of Equities

In seeking a preliminary injunction, a plaintiff must demonstrate that his claim presents a serious question of law and that the current litigation has merit so as to avoid undue harm to the defendant. *See Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1528 (9th Cir. 1993).

Here, United Capital has brought several causes of action for breach of contract which the court has found are likely to succeed on the merits. The balance of equities favors a business attempting to enforce reasonable non-solicitation and confidentiality clauses to maintain its business good will and client relationship. Therefore, the court finds that in light of the circumstances in this action the balance of equities tips sharply in favor of United Capital.

### D. Public's Interest

Before granting an injunction the court must determine that an injunction is in the public's interest. *Winter*, 129 S. Ct. at 375-76. The right to contract is fundamental and includes the privilege of selecting those who will be employed by a company and under what terms that employment will be. An injunction in this instance protects the public's interest in the integrity and enforceability of employment contracts. Further, this action involved protecting confidential client information. Therefore, the court finds that the public's interest favors an injunction in this instance.

After reviewing the documents and pleadings on file in this matter, and hearing testimony of witnesses and oral argument on United Capital's motion for a preliminary injunction, the court

finds that United Capital has clearly satisfied the requirements for issuance of a preliminary injunction. Accordingly, the court shall grant United Capital's motion.

IT IS THEREFORE ORDERED that plaintiff's motion for a preliminary injunction (Doc. #5) is GRANTED.

IT IS FURTHER ORDERED that defendants Capital Insight Partners, LLC; Suzanne Youles; and Vicki Gilman, are preliminarily ENJOINED and RESTRAINED from soliciting, contacting, or initiating any communication with any current client of plaintiff United Capital Financial Advisers, Inc., with a view to sell or provide any deliverable or service competitive with plaintiff, pending the resolution of this action.

IT IS FURTHER ORDERED that defendants shall DESTROY and/or RETURN all confidential information, non-public personal information, and/or trade secrets of plaintiff obtained by defendants. Further, each defendant shall be required to verify under oath that all such information has been returned and/or destroyed and that there are no remaining documents, copies, or evidence, computer or otherwise, which would contain or reflect such information. Further, defendants are prohibited from using any of such information for any purpose.

IT IS FURTHER ORDERED that plaintiff United Capital Financial Advisers, Inc. shall post a bond in the amount of $1,000.00 with the clerk of the court during the pendency of this action.

IT IS SO ORDERED.

DATED this 30th day of March, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE